**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

AMAZON.COM, INC. and AMAZON
DATA SERVICES, INC.,

      *Plaintiffs*,

     v.

WDC HOLDINGS LLC dba NORTHSTAR
COMMERCIAL PARTNERS; BRIAN
WATSON; STERLING NCP FF, LLC;
MANASSAS NCP FF, LLC; NSIPI
ADMINISTRATIVE MANAGER; NOVA
WPC LLC; WHITE PEAKS CAPITAL LLC;
VILLANOVA TRUST; CASEY
KIRSCHNER; ALLCORE DEVELOPMENT
LLC; FINBRIT HOLDINGS LLC;
CHESHIRE VENTURES LLC; CARLETON
NELSON; JOHN DOES 1-20,

      *Defendants*.

Case No. 1:22-mc-00007-RDA-TCB

**RESPONSE IN OPPOSITION TO INTERESTED PARTY RODNEY ATHERTON'S
MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS
<u>AND MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSITION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND ............................................................................................... 3

      A.  Facts Material to This Motion........................................................................... 3

      B.  Background Relating to the Underlying Litigation ......................................... 4

      C.  Plaintiffs' Efforts to Obtain Discovery from Atherton .................................... 5

      D.  Plaintiffs' Efforts to Resolve This Dispute ..................................................... 7

ARGUMENT .......................................................................................................................... 8

     I.     Atherton Cannot Assert Privileges that His Clients Have Affirmatively
             Waived ............................................................................................................. 9

     II.    The Crime-Fraud Exception Vitiates Atherton's Remaining Assertions of
             Attorney-Client Privilege and Work Product Protection ....................................... 10

      A.  Discovery Has Revealed Information Sufficient for a *Prima Facie*
           Showing that the Crime-Fraud Exception Applies to the Documents
           and Testimony Sought by the Subpoenas ....................................................... 11

      B.  The Documents that Amazon Is Seeking Closely Relate to Defendants'
           Fraudulent and Otherwise Unlawful Scheme ................................................. 17

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

## **Cases**

*Clark v. United States*, 289 U.S. 1 (1933) ...................................................................... 9

*E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*,
  269 F.R.D. 600 (E.D. Va. 2010) ................................................................... 9

*Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*,
  138 F.R.D. 479 (E.D. Va. 1991) .................................................................. 10

*In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*,
  33 F.3d 342 (4th Cir. 1994) ....................................................................... 18

*In re Grand Jury Subpoena*, 870 F.3d 312 (4th Cir. 2017) ........................................ 10, 11, 17, 18

*In re Grand Jury Subpoena*, 884 F.2d 124 (4th Cir. 1989) ........................................ 11

*Marquette Equip. Fin., LLC v. Rowe Fine Furniture, Inc.*,
  2008 WL 11512190 (E.D. Va. Mar. 13, 2008) ............................................ 12, 17, 19

*Navient Sols., LLC v. Law Offices of Jeffrey Lohman*,
  2020 WL 1917837 (E.D. Va. Apr. 20, 2020) .................................................. 10, 11, 17, 18, 19

*Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264 (E.D. Va. 2004) ........................ 2, 8, 11, 18

*Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551 (2d Cir. 1967) ....................... 9, 10

*United States v. Farrell*, 921 F.3d 116 (4th Cir. 2019) ............................................... 9, 10

*United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982) ............................................... 8

*United States v. Moazzeni*, 906 F. Supp. 2d 505 (E.D. Va. 2012) ............................. 9

*United States v. Zolin*, 491 U.S. 554 (1989) ............................................................... 17

## **Statutes**

Federal Rule of Civil Procedure 45 .............................................................................. 8

Amazon.com, Inc. and Amazon Data Services, Inc. (together, "Amazon" or "Plaintiffs")[1] hereby respectfully respond to the Motions to Quash the subpoenas seeking the production of documents and deposition testimony, pursuant to Federal Rule of Civil Procedure 45, that Amazon has served on Rodney Atherton ("Atherton").  Dkt. 1; Dkt. 13.

## INTRODUCTION

This proceeding concerns motions practice on two subpoenas that Amazon served on Atherton in December 2021 and March 2022 to obtain discovery in *Amazon.com Inc. v. WDC Holdings LLC*, No. 20-cv-00484-RDA-TCB (E.D. Va.).  Atherton is the attorney who helped the Defendants execute the fraud and kickback scheme at issue in that case.  He moved to quash the subpoenas in the District of Colorado, Dkts. 1, 13, and that court transferred the motions here for resolution pursuant to Federal Rule of Civil Procedure 45(f), *see* Dkt. 14.[2]

While litigating with Atherton in Colorado, Amazon obtained new evidence of Atherton's role from Defendants Nelson and Kirschner, who waived privilege last month in order to assert an advice-of-counsel defense.  Amazon also obtained new third-party discovery from Christian Kirschner, who was a co-conspirator in Defendants' scheme.  Based on this new evidence, Amazon's proposed Third Amended Complaint in the *WDC* case names Atherton as a new defendant.

---

[1]   Amazon served the subpoenas at issue in this proceeding in connection with the pending action captioned *Amazon.com, Inc., et al. v. WDC Holdings LLC*, *et al.*, No. 20-cv-00484-RDA-TCB (E.D. Va.), in which Amazon.com, Inc. and Amazon Data Services, Inc. are Plaintiffs.  The terms "Plaintiffs" and "Defendants," as used herein, refer to the named parties in the underlying action, and the term "Atherton" refers to Interested Party Rodney Atherton.

[2]   Citations to "Dkt. __" refer to docket entries in this subpoena-related proceeding.  Citations to the docket in the underlying civil case, *Amazon.com Inc. v. WDC Holdings LLC*, No. 20-cv-00484-RDA-TCB, are noted as "Civil Case Dkt. __."

*See* Civil Case Dkt. 612.  But until the Court decides Amazon's motion for leave to file that complaint, the parties must continue litigating Atherton's motions to quash Amazon's Rule 45 subpoenas.[3]

The Court should deny those motions for three reasons.  *First*, they are based on legal privileges that belong to Atherton's clients, and that certain of those clients have now waived.  As detailed below, Atherton moved to quash Amazon's subpoenas on the ground that they seek privileged legal advice he rendered to Defendants Carl Nelson and Casey Kirschner, and to Casey's brother Christian Kirschner in his capacity as the sole trustee of Defendant Villanova Trust.  All three clients have waived the privileges Atherton assets.  *Second*, any privileges not affirmatively waived are vitiated by the crime-fraud doctrine, because the subpoenas seek information relating to documents and communications that were "made for, or in furtherance of, the purpose of committing a crime or fraud."  *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 280 (E.D. Va. 2004).  The documents and communications between Atherton and his co-conspirator clients are thus categorically unprotected and Atherton must produce them and answer questions about them in deposition.  *Finally*, to the extent Atherton has documents in his possession, custody, or control that were not subject to any privilege claims in the first place, he has offered no valid grounds for withholding them, and he should be required to produce them prior to his deposition in the underlying litigation.  For all of these reasons, his motions to quash Amazon's Rule 45 subpoenas must be denied.

Amazon respectfully requests that the Court adjudicate Atherton's motions promptly and order him to produce the requested discovery because it is important to resolution of the merits

---

[3]  If Amazon's Motion for Leave to Amend the Complaint is granted and Atherton becomes a defendant in the underlying civil case, Amazon will withdraw its subpoenas and seek discovery from Atherton as a party, rendering the Motions to Quash moot.

claims in the underlying case, which are approaching the close of discovery and summary judg-ment deadlines.  Although Amazon's document subpoena has been outstanding for nearly four months and Amazon has repeatedly advised Atherton's counsel of his clients' privilege waivers, Atherton has refused to produce a single document or communication involving any of the De-fendants or co-conspirators involved in the underlying case, nor has he produced a privilege log.  Atherton also has sought to quash the deposition subpoena in its entirety on the grounds that he may be called to testify about privileged information.  Dkt. 13.  But that objection is legally and factually unsupported for the reasons addressed herein.

## RELEVANT  BACKGROUND

### A.    Facts Material to This Motion

The facts of the underlying case are familiar to this Court, and so are summarized only briefly here.  The conspiracy that gave rise to Amazon's claims began when Kirschner and Nelson, then employed as in-house real estate transaction managers at Amazon, executed an unlawful kick-back agreement with real estate developer Brian Watson, CEO of WDC Holdings LLC dba Northstar Commercial Partners ("Northstar").  Civil Case Dkt. 150 ("SAC") ¶ 163; *see* Ex. 1.  Kirschner, Nelson, and Watson agreed that Kirschner and Nelson would steer certain real estate development projects in Northern Virginia to Northstar in exchange for kickbacks disguised as legitimate "referral" payments.  *See id.*; *see also* Civil Case Dkt. 318, at 3–7; *see* Ex. 1.  To conceal the transfer of the unlawful payments, they agreed that the payments would initially be deposited into a trust account—the Villanova Trust—for which Casey Kirschner's brother Christian Kirschner was the sole trustee.  SAC ¶¶ 10, 24–25; Ex. 2; Ex. 3; Ex. 4; Ex. 1, at 34.  Defendants' enterprise later expanded to include other co-conspirators and real estate transactions, from which they reaped millions of dollars in unlawful profits.  *See, e.g.*, Ex. 1, at 37–68.

3

As detailed in Amazon's Second Amended Complaint, Defendants were able to hide their criminal enterprise and fraud on Amazon by relying on a web of shell entities and front companies through which they routed the unlawful payments. These shell entities and front companies were essential to Defendants' unlawful enterprise. Further, discovery produced over the last several weeks reveals that Kirschner, Nelson, Watson and the other co-conspirators did not simply use these entities in connection with the conspiracy. They engaged Atherton to ███████████████

███████████████████████████████████████████████████████

███████████████████████████████. Ex. 1, at 23–36.

As Amazon has described in recent filings in the underlying case, and as reflected in Amazon's Proposed Third Amended Complaint, newly produced documents also show that Atherton advised his clients in connection with this scheme and facilitated the unlawful enterprise. *See* Civil Case Dkt. 608; *see also, e.g.*, Ex. 2, at 7; Ex. 5, at 1, 7–8; Ex. 4; Ex. 1, at 24–29, 95–97. They demonstrate that ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████. Ex. 1, at 28–33. They also establish that ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████. Ex. 1, at 15–16, 28, 95–97.

### B.    Background Relating to the Underlying Litigation

Amazon brought the underlying action against Defendants in April 2020. Civil Case Dkt. 1. Shortly thereafter, Amazon sought and obtained a temporary restraining order, which was later converted into a preliminary injunction. Civil Case Dkts. 16 & 99. In converting the TRO, the Court concluded that Amazon had established a likelihood of success as to its claims under the

4

Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as various other claims. Civil Case Dkt. 99 at 11–14. The Court based this ruling on the "body of evidence including spreadsheets, wire transfer instructions, email exchanges, recorded conversations, and other materials implicating defendants in the alleged scheme" that Amazon presented even at that early stage of the action. *Id.* at 6.

Amazon later amended its complaint to provide further support for its claims. *See* SAC. Defendants filed separate motions to dismiss Amazon's operative complaint, *see* Civil Case Dkts. 174, 175, 176, 179, 181, all of which the Court denied, Civil Case Dkt. 256. The Court noted that Defendants' arguments did not challenge the legal sufficiency of Amazon's claims, but were merely "attacks on th[e] factual assertions" made in the Complaint. Civil Case Dkt. 256, at 1. The Court then concluded that Amazon's RICO, fraud, and other claims were adequately pled. *Id.* In the meantime, a subset of the Defendants (Watson and Northstar) appealed—and the Fourth Circuit unanimously affirmed—this Court's preliminary injunction. Civil Case Dkt. 318. The Fourth Circuit noted that "Amazon presented significant evidence linking the [alleged co-conspirators], Northstar, and Villanova to improper payments and money transfers," and rejected Defendants' challenges to the Court's determination that Amazon's claims are likely to succeed on the merits. *Id.* at 5–6, 19. In the meantime, discovery was confined to injunction-related matters that resulted in Rule 37 and civil contempt sanctions against Watson and Northstar. Civil Case Dkt. No. 330. In the course of these proceedings, the Nelson Defendants made two unsuccessful bids to remove the case to Seattle, *see, e.g.*, Civil Case Dkt. 256, and the parallel criminal investigation progressed against all Defendants. As a result of these various proceedings, merits discovery in the underlying action did not begin until late 2021. Civil Case Dkt. 455.

### C.    Plaintiffs' Efforts to Obtain Discovery from Atherton

On December 22, 2021, Amazon served Atherton with a third-party subpoena seeking documents relevant to Amazon's claims against Defendants.  Dkt. 1-2.  In response, Atherton filed a motion in the District of Colorado to quash the subpoena to the extent that it sought information protected by the attorney-client and attorney work product privileges.  Dkt. 1.  Atherton asserted privilege on behalf of certain individuals and entities he "represents or previously represented," including Casey Kirschner, Christian Kirschner, Nelson, Von Lacey, AllCore, the 2010 Irrevocable Trust, and Villanova Trust, in addition to Cheshire Ventures, LLC, Finbrit Holdings LLC, CTBSRM, and Renrets LLC.  *Id.* at 3.  Every one of those purported clients is implicated in the racketeering and fraud scheme at issue in the underlying litigation.  Casey Kirschner, Christian Kirschner, and Nelson have now all waived their attorney client privilege and purportedly produced their responsive documents and communications with Atherton.[4]  Exs. 6–8.  Atherton also sent a letter to Amazon's counsel objecting to the document subpoena on other grounds, Ex. 9, to which Amazon has responded, Ex. 10.  Atherton has not yet produced a single document in response to the subpoena, despite the fact that Amazon has repeatedly followed up to request that he proceed to produce any non-privileged documents in his possession while any privilege issues are litigated.  Ex. 10, at 1, 5–6; Ex. 11, at 1–3.

Given the significant overlap between the issues presented by Atherton's motion to quash and the fraud scheme central to the underlying litigation, Amazon moved on February 14, 2022 to transfer the subpoena-related proceeding from the District of Colorado to this Court.  Dkt. 7.  The

---

[4]  Defendant Carl Nelson advised, through counsel, that he is not waiving work product protection with respect to documents with Atherton dating on or after April 2, 2020.  *See* Ex. 6.  Amazon has reserved all rights to challenge the work product assertions that Nelson is maintaining as to those documents.

court in Colorado stayed the briefing deadlines on the motion to quash pending a ruling on Amazon's transfer motion.  Dkt. 5.  While the transfer motion was pending, Amazon served, and Atherton moved to quash, a subpoena seeking Atherton's deposition testimony.  Dkt. 13; Dkt. 13-1.  The motion to quash the deposition subpoena, filed March 21, 2022, was based on privilege arguments identical to those presented in Atherton's motion to quash the document subpoena.  *See* Dkt. 13.  On March 31, 2022, the court in Colorado granted Amazon's transfer motion, *see* Dkt. 14, and the action was transferred to this Court on April 1, *see* Dkt. 15.

### D.   Plaintiffs' Efforts to Resolve This Dispute

Atherton's counsel filed both motions to quash without first conferring with counsel for Amazon as was required by applicable local rules.[5]  Nevertheless, Amazon, through counsel, has sought to confer with Atherton's counsel in order to resolve, or at least narrow, narrow the issues in dispute.  While awaiting a ruling on the transfer motion, Amazon sent Atherton a detailed letter attempting to respond to and resolve Atherton's non-privilege-related objections to the document subpoena.  Ex. 10.  That letter advised that Nelson, Cheshire Ventures, and Christian Kirschner had waived privilege, and asked that Atherton promptly provide responsive documents over which that privilege had been waived, as well as any responsive non-privileged documents in his possession.  *Id.* at 5–6.  To date, although Amazon has repeatedly followed up with his counsel, *see* Ex. 11, Atherton has failed to produce any documents.

As to the motion to quash the deposition subpoena, filed March 21, 2022, Amazon wrote to Atherton's counsel on March 23 to ask that Atherton withdraw the motion on the ground that it

---

[5]   Under applicable rules in the District of Colorado, counsel for the moving party "shall confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter."  D.C.COLO.LCivR 7.1(a).  The rules of this District similarly require consultation among counsel and "a good faith effort . . . to resolve the discovery matters at issue" prior to the filing of a discovery motion. EDVA Local Rule 37(E).

contained inaccuracies. Ex. 11, at 2–3. The March 21, 2022 motion to quash stated that although certain of Atherton's clients may have waived privilege, others—including Casey Kirschner, Demetrius Von Lacey, and the entities that Atherton counted among his current or former clients—had not done so. Dkt. 13, at 3. Amazon advised Atherton's counsel that in fact, Casey Kirschner had waived privilege over his documents and communications with Atherton the day the motion was filed. Ex. 11, at 2–3. Amazon also sought again to meet and confer telephonically with Atherton's counsel regarding the outstanding issues. *Id.* at 2. Atherton's counsel ignored the request to meet and confer, and has apparently declined to withdraw the motions that are now pending before this Court. *See id.* at 1.

## ARGUMENT

To quash Amazon's subpoenas on privilege grounds under Federal Rule of Civil Procedure 45, Atherton must show that the subpoenas "require[] disclosure of privileged or other protected matter," and that "no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). To meet this burden, Atherton must show "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). Atherton cannot make this showing here.

As to Nelson, Casey Kirschner, and Christian Kirschner, Atherton's privilege claims are invalid because each of them has affirmatively waived privilege over documents and communications with Atherton relating to the subject matter of this litigation. Exs. 6–8. Further, Atherton's privilege assertions fail as to all current or former clients he advised in relation to the fraud and kickback scheme at issue in the underlying case, because the privileges he asserts are limited to "the rendering of sound legal advice," and this Court has recognized that "advice in furtherance of a fraudulent or unlawful goal cannot be considered 'sound.'" *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 280 (E.D. Va. 2004) (quoting *In re Grand Jury Subpoena*, 731 F.2d 1032, 1038

(2d Cir. 1984)).  Communications and work product that provide such advice "are not worthy of protection," *id.*, and "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.  He must let the truth be told," *Clark v. United States*, 289 U.S. 1, 15 (1933).  This crime-fraud exception to the attorney-client and work product privileges forecloses the only grounds Atherton has asserted for quashing the subpoenas in issue.

## I.   ATHERTON CANNOT ASSERT PRIVILEGES THAT HIS CLIENTS HAVE AFFIRMATIVELY WAIVED.

"In the attorney-client privilege context, the privilege belongs to the client, not the lawyer." *United States v. Farrell*, 921 F.3d 116, 135–36 (4th Cir. 2019) (cleaned up).  The client is entitled to maintain the privilege, and by the same token has the unilateral right to "waive it and divulge otherwise privileged statements."  *Id.* at 125; *see also, e.g.*, *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) (emphasizing that "an attorney can neither invoke the privilege for his own benefit when his client desires to waive it nor waive the privilege without his client's consent to the waiver").

Here, Defendants Kirschner and Nelson have waived their claims of privilege as to documents and communications with Atherton, as has Christian Kirschner.  *See* Exs. 6–8.  Atherton accordingly has no legal authority to continue to assert privilege over those documents and communications.  *See Borg-Warner Corp.*, 381 F.2d at 556; *see also Farrell*, 921 F.3d at 135–36. Moreover, because Defendants Kirschner and Nelson have asserted an advice-of-counsel defense, their privilege waivers apply "as to the subject matter of the disclosure," and thus extend to all documents and materials concerning the subject matter of this litigation.  *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010) (internal quotation marks omitted); *see United States v. Moazzeni*, 906 F. Supp. 2d 505, 512 (E.D. Va. 2012).  Given the broad subject matter waivers effectuated by these three clients, Atherton cannot quash the subpoenas on

privilege grounds, and must produce responsive documents and provide deposition testimony he would otherwise have withheld on the basis of the privileges held by those clients. *See Farrell*, 921 F.3d at 135–36; *Borg-Warner Corp.*, 381 F.2d at 556; *cf. Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 480 n.1 (E.D. Va. 1991) (noting that the right to object to discovery on grounds of attorney-client privilege is personal to the holder of the privilege).

## II.     THE CRIME-FRAUD EXCEPTION VITIATES ATHERTON'S REMAINING ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION

Atherton's motions must also be denied in their entirety for the separate reason that every one of the purported clients he identifies is implicated in the racketeering and fraud scheme at issue in the underlying litigation.  Under Fourth Circuit law, a party asserting that the crime-fraud exception applies to documents that would otherwise be protected by the attorney-client privilege or attorney work product privilege "must make a *prima facie* showing that the privileged communications fall within the exception."  *In re Grand Jury Subpoena*, 870 F.3d 312, 319 (4th Cir. 2017) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)).  The showing has two elements: "that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing [the privileged materials] . . . bear a close relationship to the client's existing or future scheme to commit a crime or fraud."  *Id.* (internal quotation marks omitted).  The standard is a modest one, and "does not require 'proof either by a preponderance or beyond a reasonable doubt.'"  *Navient Sols., LLC v. Law Offices of Jeffrey Lohman*, 2020 WL 1917837, at *4 (E.D. Va. Apr. 20, 2020) (quoting *In re Grand Jury Proceedings #5 Empanelled January 28. 2004*, 401 F.3d 247, 251 (4th Cir. 2005)). Instead, "'the proof must be such as to subject the opposing party to the risk of non-persuasion if the evidence . . . is left unrebutted.'"  *Id.*  Because the court may "rely on evidence not ordinarily

admissible at trial," the proof supporting the *prima facie* showing is not strictly constrained by the Federal Rules of Evidence. *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989).

Both elements of the *prima facie* showing are satisfied here as to documents and communications involving Atherton, whose assistance was essential to Defendants' ability to carry out the criminal conspiracy and fraud at issue in the underlying case. The allegations in the operative complaint in that case have been deemed legally sufficient to support Amazon's RICO, fraud, and other claims, and the Court accepted the evidence Amazon presented in support of those allegations as grounds for the preliminary injunction. *See* Civil Case Dkt. 99, at 11–14; *see also* Civil Csae Dkt. 318, at 5–6, 19. Further, as discussed below, new discovery has revealed Defendants' extensive reliance on Atherton to further their unlawful kickback and fraud scheme. The crime-fraud exception thus vitiates any claim of privilege that Defendants and Atherton's other purported clients might otherwise have had as to their documents and correspondence with Atherton, and Atherton may not intentionally withhold those materials or his relevant testimony from Amazon. *See In re Grand Jury Subpoena*, 870 F.3d at 319; *Rambus*, 220 F.R.D. at 287–88; *Navient Sols.*, 2020 WL 1917837, at *7.

### A. Discovery Has Revealed Information Sufficient for a *Prima Facie* Showing That the Crime-Fraud Exception Applies to the Documents and Testimony Sought by the Subpoenas

A party invoking the crime-fraud exception can satisfy the first prong by pointing to "evidence that, if believed by a trier of fact, would establish the elements of some [criminal or fraudulent conduct] that was ongoing or about to be committed." *Navient Sols.*, 2020 WL 1917837, at *7 (internal quotation marks omitted). The standard, which requires *less* than a preponderance of the evidence, is easily satisfied here given the extensive evidence of the existence, scope, and nature of Defendants' scheme and Atherton's role in facilitating the unlawful conduct Amazon alleges. *See, e.g.*, *id.* at *4–7 (holding that party satisfied the first prong of the prima facie showing

by presenting the court with "emails and deposition testimony corroborating both the existence of the scheme and [the lawyer]'s involvement in it"); *Marquette Equip. Fin., LLC v. Rowe Fine Furniture, Inc.*, 2008 WL 11512190, at *2 (E.D. Va. Mar. 13, 2008) (holding that evidence of "effort to mislead" another court was sufficient to establish the crime-fraud exception).

Indeed, in *Grand Jury Subpoena*, the court affirmed application of the crime-fraud exception based on evidence "that the [d]efendant *likely* engaged in" fraudulent conduct. 870 F.3d at 319–20 (emphasis added). The record here, which includes preliminary injunction findings of likelihood of success on the merits that have already been unanimously affirmed on appeal, is vastly stronger. This Court's orders granting Amazon's motion for a temporary restraining order and converting it into a preliminary injunction, Civil Case Dkts. 16, 99, required express findings of Amazon's likelihood of success on the merits that the Fourth Circuit unanimously affirmed on appeal last year, Civil Case Dkt. 318. And Amazon's likelihood of success is even stronger today, with the benefit of just partial merits discovery that has included the Atherton evidence addressed herein, which Amazon is continuing to develop. Amazon's RICO and fraud allegations relating to Atherton, Kirschner, Nelson, and their co-conspirators—and select evidence in support of those allegations, on the record as it now exists—are as follows:

**Lease Transaction Kickbacks and Fraud.** The evidence of Defendants' fraud and other unlawful activities is extensive and is detailed in the Second Amended Complaint as well as the pending Third Amended Complaint in the underlying case. *See* Civil Case Dkt. 150 ("SAC"); *see also* Civil Case Dkt. 612. As relevant here, two Atherton clients and former Amazon transaction managers, Defendants Casey Kirschner and Carl Nelson, took advantage of their positions at Amazon to secure lucrative kickbacks in exchange for steering deals to preferred developers or through front companies they controlled. Kirschner and Nelson met Watson, the CEO of Northstar, in

2017. Civil Case Dkt. 318, at 3–7. Watson was a close friend of Kirschner's brother, Christian. SAC ¶ 115. Watson completed an "Independent Contractor Agreement" on behalf of his commercial real estate development company, Northstar, with Defendant Villanova Trust, which Atherton established at his clients' request. *Id.* ¶ 24; Ex. 2. Christian Kirschner was the trustee of Villanova and signed the "Independent Contractor Agreement" with Watson, who signed on behalf of Northstar. SAC ¶¶ 112–115; Ex. 12. Under the "Independent Contractor Agreement," Northstar agreed to pay Villanova Trust a portion of its proceeds from Amazon lease transactions. *See* Ex. 12. By December 2018, Northstar had transferred millions of dollars in kickback payments to the Villanova Trust under the Independent Contractor Agreement. SAC ¶ 116; *see, e.g.*, Ex. 1, at 21. The conspirators used the Villanova Trust to then funnel that money through other entities Atherton established for the ultimate benefit of Kirschner and Nelson, in addition to Christian Kirschner. *See, e.g.*, Ex. 3; Ex. 13; Ex. 1, at 21–36. They did so through a trust that Atherton created and advised Defendants they could use to disburse loans to themselves that they would not have to repay, but also would not have to treat as taxable income. SAC ¶ 114; *see also, e.g.*, Ex. 3; Ex. 13; Ex. 14; Ex. 1, at 33–36.

The discovery in the underlying case shows that Kirschner and Nelson anticipated receiving more than $14 million from Northstar as their "share" of amounts that Amazon committed to pay Northstar over the lifetime of the leases at issue in the underlying suit. SAC ¶¶ 127–128; Civil Case Dkt. 155-10. Casey Kirschner and Nelson used their positions at Amazon to secure these deals for Northstar, and to conceal their own involvement from others within Amazon. SAC ¶ 108; Ex. 1, at 36; Ex. 15, at 4. To execute this scheme, these Defendants sought Atherton's advice in connection with the rigged bid that Northstar submitted to Amazon in connection with the first of the Lease Transactions. Ex. 16. They then ███████████████████████████████



██████. *See* Ex. 17; Ex. 18; *see also* Ex. 1, at 23–36, 95–97; Ex. 4; Ex. 19.

Recent discovery shows that Atherton rendered specific advice and assistance regarding the transfers of kickback funds to the entities that distributed the funds to Kirschner and Nelson. Ex. 20, at -00124 through -00125; Ex. 17. For example, ████████

Ex. 15, at 4. ████████

*Id.* at 2–4.

Notably, recent discovery also shows that ████████

Ex. 1, at 28, 30–32; Exs. 21–22. ████████.

Ex. 1, at 33. ████████

*Id.*

14

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████   *Id.* at 15–16, 28, 95–97.

Christian Kirschner, the Trustee of defendant Villanova Trust, has been deposed.  He in-voked his Fifth Amendment right against self-incrimination in response to all substantive questions relating to Atherton, Villanova Trust, the 2010 Irrevocable Trust, AllCore, his Independent Con-tractor Agreement with Northstar, and other topics relevant to the fraudulent scheme that he helped facilitate.  *See* Ex. 23.

***Direct Purchase Transaction Kickbacks and Fraud.***  Kirschner and Nelson also arranged or received kickbacks on at least two properties purchased outright by Amazon.  In both transac-tions, Kirschner and Nelson worked with others—former Northstar employees Will Camenson and Kyle Ramstetter for the White Peaks Purchase, SAC ¶¶ 158, 294–301, and the Blueridge Group for the Blueridge Purchase, *id.* ¶¶ 316–326—to flip properties to Amazon at inflated prices and divert the proceeds into entities established by Atherton and controlled by Nelson and the Kirschners.  Ex. 1, at 36–87; *see also* Exs. 24–27.  The scheme, which depended upon entities Atherton created and managed for Defendants to hide Nelson and Casey Kirschner's involvement, continued even after Nelson was terminated from Amazon for misconduct unrelated to the claims in the underlying case.  SAC ¶ 318; Ex. 1, at 51.  Following his involuntary departure, Nelson continued to collude with Kirschner while using another intermediary entity created by and regis-tered to Atherton—Cheshire Ventures—to continue the fraud.  SAC ¶¶ 40, 104, 316; Ex. 25; *see also* Ex. 1, at 35, 65–67; Exs. 28–29.  At the same time, Kirschner moved into Nelson's former role overseeing Amazon real estate acquisitions throughout Northern Virginia.  Nelson, ███

, then arranged the Blueridge Purchase.  SAC ¶¶ 314–326; Ex. 1, at 37–68.

Both Ramstetter and Camenson have been deposed.  Like Christian Kirschner, they invoked their Fifth Amendment rights against self-incrimination in response to all substantive questions relating to their roles in Defendants' enterprise.  Exs. 30–31.  In particular, they invoked their Fifth Amendment rights in response to questions about Defendants, the Direct Purchase Transactions, and the kickbacks that Nelson and Casey Kirschner received in connection with those transactions.  Exs. 30–31.

Throughout the course of the unlawful enterprise, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮.  *See, e.g.*, Ex. 1, at 95. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* (emphasis added).  The kickback payments that Defendants sought to disguise in connection with the Direct Purchase Transactions (like those from the Lease Transactions) were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See, e.g.*, Ex. 1, at 24–25, 28–29, 31–36.  Those entities included

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See id.*; *see also, e.g.*, Ex. 19. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Ex. 1, at

24–25; *see also, e.g.*, Ex. 32, at -000046. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████. *See* Civil Case Dkt. 612, ¶ 294; *see also, e.g.*, Ex. 19 (reflecting payments to "RA-VL," presumably referring to Rod Atherton and Von Lacey). As discussed above, ███████████████████████████ ████████████████████. Ex. 1, at 28, 31–36, 95; Exs. 21–22.

*      *      *

The evidence in the discovery record to date alone provides abundant support for Amazon's allegations regarding the nature of Defendants' unlawful conspiracy, and is more than sufficient to establish that Defendants engaged Atherton to facilitate their fraud scheme. It also shows that the other clients he purports to represent were created or brought in specifically for the purpose of furthering that scheme. Crucially, Nelson and the Kirschners consulted and worked with Atherton as an ongoing part of their scheme and sought his advice to protect their *future conduct* from discovery. *See United States v. Zolin*, 491 U.S. 554, 562–63 (1989) (attorney client privilege about wrongdoing "ceases to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*" (quoting 8 Wigmore on Evidence § 2298, at 573) (alteration omitted) (emphasis in original)). The documents and testimony Amazon has presented would unquestionably "subject the opposing party to the risk of non-persuasion if the evidence . . . is left unrebutted." *Navient Sols.*, 2020 WL 1917837, at *4 (quoting *In re Grand Jury Proceedings #5*, 401 F.3d at 251). Amazon has thus made a sufficient showing under the first prong of the crime-fraud exception. *See id.* at *4–7; *Marquette Equip.*, 2008 WL 11512190, at *2; *In re Grand Jury Subpoena*, 870 F.3d at 319–20.

**B.      The Documents That Amazon Is Seeking Closely Relate to Defendants' Fraudulent and Otherwise Unlawful Scheme**

The second element of the *prima facie* showing required for the crime-fraud exception turns on whether "'the documents containing [the privileged materials] . . . bear a close relationship

17

to the client's existing or future scheme to commit a crime or fraud.'" *In re Grand Jury Subpoena*, 870 F.3d at 319 (quoting *Chaudhry*, 174 F.3d at 403).  The required showing for this element is also modest, and proof by a preponderance is not required.  *Navient Sols.*, 2020 WL 1917837, at *4.  A party can make the required showing where, for example, it has made a request *about* the alleged crime or fraud, and its adversary invokes the challenged privileges in response to that request.  *See id.* at *7;  *In re Grand Jury Subpoena*, 870 F.3d at 319–20.

The documents and communications that Amazon is seeking from Atherton are necessarily closely related to the fraud and other unlawful acts alleged in the underlying action and described above.  Amazon's document requests sought information that would go to the heart of Amazon's claims, which themselves are based on Defendants' fraudulent and illegal conduct.  *See* Dkt. 1-2; *see also* Ex. 10, at 3–5.  These points are sufficient for purposes of the second element of the *prima facie* showing.[6]  *Navient Sols.*, 2020 WL 1917837, at *7 (finding sufficiently close connection between withheld documents and allegedly criminal conduct where documents in question were responsive to document requests relating to topics that "constitue[d] the core of the purported criminal or fraudulent conduct"); *In re Grand Jury Subpoena*, 870 F.3d at 319–20 (questions regarding the source of fraudulent document were sufficiently closely related to support application of crime-fraud exception).  Atherton's motions to quash accordingly should be denied, and Ather-

---

[6] At minimum, the record is sufficient to warrant *in camera* review of any documents over which Atherton is continuing to assert privilege, or may wish to assert privilege, which would allow the Court "to determine whether the documents themselves give rise to a prima facie case . . . sufficient to support application of the crime/fraud exception."  *Rambus*, 220 F.R.D. at 287–88; *see also In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 350 (4th Cir. 1994) (noting binding precedent establishing that in assessing whether the crime-fraud exception applies to documents claimed as privileged, "the documents themselves c[an] be examined to make the necessary determination").

ton should be required to produce documents and provide deposition testimony regarding the communications over which he has claimed privilege, as well as the non-privileged materials that he has been withholding without explanation. *Accord, e.g.*, *Marquette Equip.*, 2008 WL 11512190, at *2 (granting motion to compel documents and deposition testimony withheld as privileged, on grounds that the crime-fraud exception applied); *Navient Sols.*, 2020 WL 1917837, at *7 (overruling objection to order relating to motion to compel on crime-fraud exception grounds).

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny Atherton's motions to quash and require him to produce documents and sit for deposition pursuant to the subpoenas that were properly served on him pursuant to Federal Rule of Civil Procedure 45.

Dated: April 11, 2022                    Respectfully submitted,

                                         *s/ Michael R. Dziuban*
                                         Michael R. Dziuban (Va. State Bar No. 89136)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036-5306
                                         Telephone:  (202) 955-8500
                                         Facsimile:  (202) 467-0539
                                         mdziuban@gibsondunn.com

                                         *Counsel for Plaintiffs Amazon.com, Inc. and*
                                         *Amazon Data Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of filing to all registered counsel of record in this action.

> *s/ Michael R. Dziuban*
> Michael R. Dziuban
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, D.C. 20036-5306
> Telephone:  (202) 955-8500
> Facsimile:  (202) 467-0539
> mdziuban@gibsondunn.com
>
> *Counsel for Plaintiffs Amazon.com, Inc. and Amazon Data Services, Inc.*